William L. . Ford, J.
By notice of motion claimant seeks summary judgment on its claim, filed pursuant to chapter 996 of the Laws of New York of 1972, in the amount of $7,347.29 as the balance alleged to be due and payable as reimbursement for funds expended by claimant as set forth in said chapter and which had been provided by chapter 138 of the Laws of New York of 1970, for certain school-related services, described in *978 both chapters,[1] rendered in the second half of the 1971-1972 school year.
The defendant did not file an answering affidavit to claimant’s motion. In its memorandum of law, filed prior to oral argument of the motion, and during the argument, it opposed claimant’s motion and cross-moved for summary judgment dismissing the claim on the grounds that chapter 996 is unconstitutional and that the decision of the United States Supreme Court in Levitt v. Committee for Public Educ. (413 U. S. 472) requires dismissal. Subsequent to the argument, defendant requested, by letter, to the court, that its cross motion be treated as a motion to dismiss rather than as a motion for summary judgment. The claimant, by letter to the court, stated that it had no objection to the request and the court, therefore, considers the defendant’s motion as one for dismissal of the claim.
Both parties came to court originally with motions for summary judgment, and there has been no evidentiary hearing requested or held. The only sworn statements are contained in the affidavit attached to claimant’s notice of motion. The court, therefore, finds that there is no factual issue herein.
The claimant contends, the defendant does not dispute, and the court finds, that claimant was one of the schools included within the provisions of chapter 138 and in accordance therewith made application for reimbursement for services rendered in the school year 1970-1971 and was reimbursed by the State for that school year in two equal payments; that claimant budgeted for, relied upon and filed a similar application on or about November 5, 1971 for reimbursement for the school year 1971-1972 and the State reimbursed the claimant in January of 1972 for the first semester; and that the claimant rendered the required services for the remaining semester of the 1971-1972 school year and has not been reimbursed therefor.
The court further finds as undisputed that on September 6, 1972 the claimant timely filed its claim with this court pursuant to chapter 996 which was approved and became effective on June 8, 1972; that this claim has not been assigned or submitted to any other court or tribunal for audit or determination and that chapter 996 conferred jurisdiction upon this court to *979 hear, audit and determine the claim or claims of nonprofit schools, other than public schools, against the State for reimbursement of the funds expended by them in rendering certain school-related services under chapter 138, commonly known as the Mandated Services Act, which act became law on April 18, 1970, effective on September 1, 1970, though its applicability related back to July 1, 1970, and which act was held unconstitutional by a three-Judge United States District Court, Southern District of New York in Committee for Public Educ. v. Levitt (342 F. Supp. 439) decided April 27, 1972, one Judge dissenting, and was affirmed with opinion by the United States Supreme Court in Levitt v. Committee for Public Educ. (413 U. S. 472 [June 25, 1973]).
The claimant contends, in moving for summary judgment, that, as a matter of State law and equity, the Legislature in enacting chapter 996 on June 8, 1972, has properly and legally recognized that, upon the factual situation here present, the State was morally obligated to establish a procedure by which claimant could be reimbursed and to confer jurisdiction upon this court to hear, audit and determine the claim or claims of claimant and other nonprofit schools located in the State, other than public schools, against the State for reimbursement of the funds expended by them in rendering services for examination and inspection in connection with certain school related services as described in chapters 138 and 996.
Claimant argues that chapter 996 is constitutional in all respects and that the situation in which it finds itself and which .morally obligates the State to reimburse it, consists substantially of the following facts: that the State, by chapter 138, represented and promised to claimant, and others similarly situated, that they would be reimbursed for expenses incurred after July 1, 1970 in rendering the services mandated by said chapter 138; that the State knew that claimant and said schools were relying on said representation; that said representation was an effective cause of said expenses by claimant and other schools; that appropriations, known to claimant, were made to the Education Department to enable that department to reimburse such schools for the rendering of such services; that based on the representation of the State that reimbursement would be made for such services, such schools already in fiscal crisis, by budgetary allocations and other methods, made available the necessary personnel to perform such services; that Federal courts, by various orders, enjoined payments to such schools and as a result, reimbursement for the full period July 1, 1971 *980 to June 30,1972 has not been made to claimant and such schools, although all such services were duly performed; that claimant and such schools during such period did incur expenses in rendering the mandated services in reliance upon such representation of reimbursement; and that the Legislature has indeed recognized a moral obligation resting upon the State to provide, as it has attempted to do, a remedy whereby such schools may recover the complete amount of expenses incurred by them prior to June 30, 1972 in reliance on the said representation. Claimant argues further that not only do the foregoing facts exist but also that the State Legislature in the very language of chapter 996 admits all of them and states, upon said facts, its own conclusions that a moral obligation to reimburse exists and that said claim or claims are founded in right and justice, or in law or equity.
Any issues of Federal law and equity, claimant contends, in effect, have been decided already in its favor in Lemon v. Kurtzman (403 U. S. 602 [1971, Lemon I] and 411 U. S. 192 [1973, Lemon II]). It argues that in Lemon II as in Levitt (342 F. Supp. 439, affd. 413 U. S. 472, supra) a, group of taxpayers sought to thwart the legislative will through the filing of Federal suits, without pursuing or obtaining preliminary injunction, thus allowing the legislative enactments to become and remain effective and allowing the States and the nonpublic schools to rely on such enactments; that in both cases, the constitutionality of the respective statutes was determined finally only after full review by the Supreme Court; that in both cases, judgment of unconstitutionality was made at or near the end of the school year; that in both cases, the nonpublic schools and the States had relied, in good faith, on the respective statutes and the nonpublic schools had incurred substantial financial obligations pursuant thereto during the time the Federal actions were pending. Thus, claimant argues, to the extent that Federal constitutional issues relate to its motion, Lemon II is controlling and supports its claim.
The defendant contends that chapter 996 is unconstitutional in that, at the outset, the State Legislature lacked the constitutional power to enact chapter 996 authorizing this claim.
The defendant further contends that some act on the part of the State creating a moral obligation to reimburse is lacking in the instant claim and is necessary as a matter of law in order to overcome the constitutional prohibitions of (a) auditing of private claims by the Legislature (N. Y. Const., art. III, § 19) or (b) making gifts of State money (N. Y. Const., art. VII, § 8).
*981 In support of its contention the defendant argues that a moral obligation, such as to validate enabling acts, is created only in those cases in which there has been an unjust enrichment of the State by virtue of benefits conferred upon it by private persons and, secondly, in those cases in which the claimant is injured by some act of the State or its officers and agents.
The defendant’s position is that, in the instant case, there has been no benefit to or unjust enrichment of the State, nor has there been any injury or damage inflicted by anyone in the State’s service. In fact, says defendant, the enabling act itself clearly demonstrates in subdivision (a) of section 2 that prior to July 1, 1970 claimant was performing, at its own expense, the same services for which it now seeks reimbursement and that, therefore, any claim that these services were performed on representations of the State clearly is without merit and, in any case, it had no right to so rely.
Additionally, the defendant argues that since chapter 138 provides no procedure to insure that State funds are not used for religious purposes, this court cannot determine whether the amount claimed is subject to constitutional objections and, therefore, in purporting to allow claimant to recover the sum of $7,347.29 the Legislature is auditing a private claim in contravention of section 19 of article III of the State Constitution.
The defendant urges another objection to the enabling act, namely, that it is an attempt by the Legislature to reverse the decisions of the District Court and the United States Supreme Court in Levitt (supra) and that this attempt is a clear violation of the constitutional doctrine of separation of powers, being an invasion of the powers of the judiciary by the Legislature.
Lastly, the defendant contends that the decision of the Supreme Court in Levitt v. Committee for Public Educ. (413 U. S. 472, supra) requires dismissal of this claim, and defendant reinforces this contention by arguing that the decisions of the Supreme Court in Lemon v. Kurtzman (403 U. S. 602 [June 28, 1971, Lemon I] and 411 U. S. 192 [April 2, 1973, Lemon II]) relied on by claimant, are distinguishable from Levitt (supra) and, in fact, actually support the defendant’s position.
In deciding these motions, attention should first be directed, in the court’s view, to the critical question of whether or not, assuming arguendo that chapter 996 was constitutionally enacted, the implementation thereof by this court would be constitutionally permissible. If the answer to this question be in the negative, there is no purpose in the court’s determining whether the facts, upon which this claim authorized by chapter *982 996 arose and which the court has found are as the Legislature has determined them to be, constitute a predicate for a moral obligation on the State’s part which is essential for the creation of a valid claim.
The court is of the opinion that it must answer its question in the negative and it therefore holds that the implementation of chapter 996, in the form of an award of a payment to the claimant, would be constitutionally impermissible as violative of the Establishment Clause of the First Amendment to the Constitution of the United States, and bases its decision upon the holdings made in the majority opinion of Mr. Chief Justice Bubgeb in Levitt (supra).
The significant holding therein and discussion is to be found on pages 479 to 480: “As noted previously, Chapter 138 provides for a direct money grant to sectarian schools for performance of various ‘ services. ’ Among those services is the maintenance of a regular program of traditional internal testing designed to measure pupil achievement. Yet, despite the obviously integral role of such testing in the total teaching process, no attempt is made under the statute, and no means are available, to assure that internally prepared tests are free of religious instruction.
“We cannot ignore the substantial risk that these examinations, prepared by teachers under the authority of religious institutions, will be drafted with an eye, unconsciously or otherwise, to inculcate students in the religious precepts of the sponsoring church. We do not ‘ assume that teachers in parochial schools will be guilty of bad faith or any conscious design to evade the limitations imposed by the statute and the First Amendment.’ Lemon v. Kurtzman, 403 U. S., at 618. But the potential for conflict ‘inheres in the situation,’ and because of that the State is constitutionally compelled to assure that the state-supported activity is not being used for religious indoctrination. See id., at 617, 619. Since the State has failed to do so here, we are left with no choice under Nyquist but to hold that Chapter 138 constitutes an impermissible aid to religion; this is so because the aid that will be devoted to secular functions is not identifiable and separable from aid to sectarian activities.”
Mr. Chief Justice Bubgeb said more on page 482: “We hold that the lump sum payments under Chapter 138 violate the Establishment Clause. Since Chapter 138 provides only for a single per-pupil allotment for a variety of specified services, *983 some secular and some potentially religious, neither this Court nor the District Court can properly reduce that allotment to an amount corresponding to the actual costs incurred in performing reimbursable secular services. That is a legislative, not a judicial function.”
Chapter 996 states, among other things, that the base of this claim and others is, in effect, predicated on the nonprofit, nonpublic schools’ performance of certain services beneficial to the State and such schools’ reliance for reimbursement therefor under chapter 138. The Supreme Court, in Levitt, held that chapter 138 violated the Establishment Clause. To hold with the claimant would require this court to implement chapter 996. This cannot be done because it would have the effect of resurrecting chapter 138 which the Supreme Court declared unconstitutional.
Despite the holding in Levitt, claimant urges that Lemon II stands for the proposition that, even though a State statute may have been struck down under the Establishment Clause, nevertheless, when a claimant relies thereon, prior to the finding of unconstitutionality, in performing certain services with the expectation of reimbursement, which is not forthcoming, then, in right, justice, law and equity claimant should be reimbursed. As applied to the facts of the instant claim we disagree, because in Lemon II the Supreme Court, after remand, found that any payments there allowed “ will not be applied for any sectarian purposes ” (see pp. 202-203), whereas in Levitt the court found (p. 480) that “ the aid that will be devoted to secular functions is not identifiable and separable from aid to sectarian activities ”.
In Lemon 11, in affirming the judgment of the three-Judge District Court of the Eastern District of Pennsylvania entered after remand, Mr. Chief Justice Burger, in an opinion joined in by three other Justices, made a specific finding that the State funds there involved would not be applied for any sectarian purposes, stating (pp. 202-203): ‘ ‘ Yet even assuming a cognizable constitutional interest in barring any state payments, under the District Court holding, that interest is implicated only once under special circumstances that will not recur. There is no present risk of significant intrusive administrative entanglement, since only a final post-audit remains and detailed state surveillance of the schools is a thing of the past. At the same time, that very process of oversight — now an accomplished fact — ■ assures that state funds will not be applied for any *984 sectarian purposes.[2] Finally, as will appear, even this single proposed payment for services long since passing state scrutiny reflects no more than the schools’ reliance on promised payment for expenses incurred by them prior to June 28, 1971.”
The reimbursement in Lemon 11, affirmed by the Supreme Court, was found allowable because of the very reason the statute was struck down, i.e., the excessive entanglement by the State of Pennsylvania. Such process of oversight by the State, in the form of auditing, assured that State funds would not be applied for any sectarian purposes. Hence, the Supreme Court reasoned that, even assuming a cognizable constitutional interest in barring any State payments under the Pennsylvania statute, any payments to the schools would not and could not be applied by them in aid of sectarian purposes. That essential assurance is lacking in chapters 138 and 996.
Neither can we implement, try as we may, chapter 996 to the extent of allowing, after a trial and the taking of proof, reimbursement to claimant and others similarly situated for moneys expended for services rendered which would seem to fall within the ambit of constitutional permissibility, i.e., maintenance of records of pupil enrollment and reporting thereon, maintenance of public health records, recording of personnel qualifications and characteristics and services of a like nature which are purely secular activities. This is so because in Levitt (supra, p. 482), the Supreme Court, as we previously noted, stated: ‘ ‘ Since Chapter 138 provides only for a single per-pupil allotment * * * neither this Court nor the District Court can properly reduce that allotment to an amount corresponding to the actual costs incurred in performing reimbursable secular services. That is a legislative, not a judicial function.”
*985 Nor does chapter 996 impose enforceable standards or guidelines which would enable this court to separate and apportion the single per-pupil allotment among the various allowed purposes. (Wolman v. Essex, 342 F. Supp. 399 [1972], affd. 409 U. S. 808, reh. den. 413 U. S. 923; McArthur v. State of New York, 43 A D 2d 652 [1973].) Such standards or guidelines are to be established by the Legislature, not the courts.
Sympathize as we do with this claimant, and the many others similarly situated, and recognize as we must their great and ongoing contributions to the education of over 800,000 young people in this State, and aware as we are of the serious financial problems directly facing the parochial schools, and indirectly, the public, we are, nevertheless, at the same time, constrained because of the Supreme Court decisions in Levitt and Lemon II, to deny reimbursement as being unconstitutional..
In Committee for Public Educ. v. Levitt (342 F. Supp. 439, 445) we find: “ But the First Amendment, which has for two centuries assured the individual’s right to worship as he chooses, protected the church from the impositions of the state, and immunized the national community against the ills of religious-political divisiveness, must be our guiding star.”
Accordingly, claimant’s motion for summary judgment is denied and the defendant’s motion for dismissal of this claim is granted.
This decision is not intended to affect any claim or claims which have been filed with the court pursuant to chapter 996 by any nonchurch, nonreligious or nonsectarian nonpublic schools.

. The school-related services described in chapters 138 and 996 included examination and inspection in connection with administration, grading and the compiling and reporting of the results of tests and examinations, maintenance of records of pupil enrollment and reporting thereon, maintenance of pupil health records, recording of personnel qualifications and characteristics, and the preparation and submission to the State of various other reports as provided for or required by law or regulation.

. See Lemon I (p. 640) :
“If the government closed its eyes to the manner in which these grants are actually used it would be allowing public funds to promote sectarian education. If it did not close its eyes but undertook the surveillance needed, it would, I fear, intermeddle in parochial affairs in a way that would breed only rancor and dissension.” (Concurring opn. of Douglas, J.)
“ The court thus creates an insoluble paradox for the State and the parochial schools. The State cannot finance secular instruction if it permits religion to be taught in the same classroom; but if it exacts a promise that religion not be so taught * * e and enforces it, it is then entangled in the ‘no entanglement’ aspect of the Court’s Establishment Clause jurisprudence.” (p. 668 [dissenting opn. of White, J.]).
Here, the “insoluble paradox” is avoided because the entangling supervision prerequisite to State aid has already been accomplished and need not enter into our present evaluation of the constitutional interests at stake in the proposed payment.